IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CYNTHIA B. BLUM,          ) | |
|     Plaintiff,          ) | |
| ) | Civil Action No. 5:13-cv-00068 |
| v.          ) | |
| ) | |
| CAROLYN W. COLVIN,          ) | |
| Acting Commissioner,          ) | |
| Social Security Administration,          ) | By:    Joel C. Hoppe |
|     Defendant.          ) | United States Magistrate Judge |

**REPORT AND RECOMMENDATION**

    Plaintiff Cynthia Blum asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. Blum objects to the Administrative Law Judge's ("ALJ") finding that she did not have a severe medically determinable impairment and asserts that the Commissioner failed in her duty to develop Blum's medical record. She asks the Court to reverse the Commissioner's decision and award benefits, or to remand her case for further administrative proceedings.

    This Court has authority to decide Blum's case under 42 U.S.C. § 405(g), and her case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 14. After considering the administrative record, the parties' briefs, oral argument, and the applicable law, I find that substantial evidence supports the Commissioner's decision that Blum was not entitled to DIB and that the Commissioner fulfilled her duty to develop Blum's medical record. Therefore, I recommend that the Court affirm the Commissioner's final decision.

1

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence," *Id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation marks omitted). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

2

than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not, (5) whether he or she can perform other work. *See* 20 C.F.R. § 404.1520(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Blum filed for DIB on December 8, 2010, alleging disability beginning January 1, 1998.[1] Administrative Record ("R.") 106. Her last insured date is December 31, 1998. R. 14. At filing, Blum was 46 years old and had worked as a cashier, dining room manager, and hostess. *See* R. 106, 199. During 1998, Blum was a stay-at-home mother. R. 212. Blum claimed inability to work because of manic depression, acute psychosis, and bipolar disorder. R. 138. A state agency denied Blum's application initially and upon reconsideration. R. 50, 55.

Blum appeared with counsel at an administrative hearing on June 23, 2011. R. 538. She testified to the onset and history of her symptoms, the treatment for them, and her past work. R. 539–44. No one else testified at Blum's hearing. *See* R. 537. In a written decision dated July 29, 2011, the ALJ found that Blum was not disabled under the Act. R. 12–16.

---

[1] Blum twice previously filed for DIB and was twice rejected at the state agency level, on February 8, 2008, and September 24, 2009. R. 59, 92. She did not appeal either of those decisions. *See id*.

3

The ALJ found that Blum did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 1998, through her last insured date of December 31, 1998. R. 14. The ALJ noted that although Blum's work activity rose to the level of substantial gainful activity in 2006, the record does not support a decision to deny her claim based solely on work activity. *Id.*

At step two, the ALJ found that Blum did not suffer from a medically determinable impairment through her last insured date. R. 14–15. He noted that from January 1 through December 31, 1998, the record contains treatment notes only for right knee pain and allergic rhinitis. R. 15. The ALJ found that evaluations of Blum's physical symptoms alone could not support finding an impairment and that there were no medical signs or laboratory findings in the record to substantiate Blum's claim of a mental impairment. *Id.* He therefore denied Blum's application, finding that she was not disabled during her period of coverage. *Id.* The Appeals Council declined to review the ALJ's decision on October 2, 2012, R. 4, and this appeal followed.

### III. Discussion

On appeal, Blum objects to the ALJ's finding that she did not suffer from a severe medically determinable mental impairment through her last insured date. She also asserts that the Commissioner failed in her duty to develop Blum's complete medical record for the 12 months preceding her alleged onset date. Pl. Br. 4, ECF No. 16.

A. *Severe Medically Determinable Impairment*

Blum asserts that if the ALJ had examined the entire record, he could not have concluded that she did not have a medically determinable impairment. Pl. Br. 5. She is correct. There is sufficient evidence in the record to conclude that Blum suffered from a medically determinable

4

impairment between January 1 and December 31, 1998. There is not, however, sufficient evidence to conclude that she had a *severe* impairment. The ALJ's error was therefore harmless. *See Austin v. Astrue*, No. 7:06cv622, 2007 WL 3070601, at *6 (W.D. Va. Oct. 18, 2007) (Urbanski, M.J.) ("Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

    *1.    Relevant Medical Evidence*

Blum's medical records concerning mental health begin in 1997, nine months prior to her alleged onset date of January 1, 1998. On March 24, 1997, Blum reported to Dr. Mark G. Petrizzi, M.D., at Hanover Family Physicians that she had "some sleep disturbance, irritability, guilt, low energy, some difficulty concentrating, and appetite changes." R. 309. Blum scored a 66 on the Zung depression scale, indicating moderate to marked depression. *Id.* Dr. Petrizzi determined that her depression and fatigue were related to an adjustment disorder and prescribed Paxil. *Id.*

On April 15, 1997, Blum returned for a follow-up visit with Dr. Petrizzi. R. 307. She reported feeling "about 75% better after being on Paxil for 2 weeks." *Id.* Dr. Petrizzi suggested psychological therapy and gave her the names of Dr. Tom Terraciano and Dr. Debbie Blackburn, M.D., so she could determine whether they accepted her medical insurance. *Id.*

On May 5, 1997, Blum saw Dr. Shelley C. Short, M.D., at Hanover Family Physicians. R. 306. She reported "the Paxil feels like it is getting her back to her old self," though it also caused an allergic reaction. *Id.* Dr. Short switched her prescription to Zoloft to address the reaction. *Id.*

5

On June 6, 1997, Blum told Dr. Petrizzi that she "feels significant irritability when she is not on any medication." R. 305. Dr. Petrizzi noted her allergic reaction had cleared while she was off Paxil and switched her prescription to Prozac. *Id.*

On July 15, 1997, Blum reported taking herself off Prozac because "she felt it was making her periods abnormal." R. 304. After speaking to Dr. Petrizzi, she agreed to begin taking it again. *Id.* Handwritten notes on the same page indicate that Blum had an appointment with Dr. Terraciano, who informed Dr. Petrizzi that she may be suffering from PTSD or ADD.[2] *Id.* Another note dated August 6, 1997, indicates that Dr. Petrizzi wanted Blum to see Dr. Kornsler for further evaluation. *Id.*

From January 1 through December 31, 1998, Blum's medical records relate to physical issues, with only indirect references to Blum's mental health. On January 22, 1998, Blum complained of right knee pain. R. 303. A handwritten note on the same page dated March 19, 1998, states that Blum's labs were normal and that a copy of the labs was faxed to Dr. Rochelle Klinger, M.D. *Id.*

On June 2, 1998, Blum sought help for allergies and right knee pain. R. 302. The treating physician noted she was "pleasant" and in "[n]o apparent distress." *Id.*

On December 10, 1998, Blum sought treatment for allergies. R. 301. Dr. Charlotte B. Woodfin, M.D., noted that her medications included Prozac and Clonazepam "for depression and anxiety." *Id.* Blum also reported she had "a lot of stress going on" and was "seeing a psychiatrist for her depression." *Id.*

The next treatment note in the record related to Blum's mental health is dated fifteen months after her last insured date. On March 23, 2000, Blum saw Dr. Klinger for a follow-up

---

[2] This note is partly illegible. *See* R. 304.

visit, her last appointment having been "over a year ago." R. 249. Blum reported that she stopped taking Prozac a year prior to this follow-up and "over the last several months [had experienced] an increase in irritability, crying spells, and difficulty getting along with her husband." *Id.* Dr. Klinger recorded that she "continues to have a delusional disorder, which is untreated," and had an "exacerbation of her depression." *Id.* She prescribed Celexa. *Id.*

The following month, Blum was admitted at The Medical College of Virginia Hospitals ("MCV") for a suicide attempt using Tylenol. R. 251–53. On April 25, 2000, the attending resident at MCV completed a psychiatric evaluation form, which states that Blum had "been in and out of treatment with Dr. Klinger as an outpatient since 1997" because of a "past psych history of depression." R. 253. "Per Dr. Klinger, pt. has been accusing her husband of having an affair with her next door neighbor's sister for the past 2–3 years and has been [increasingly] bizarre in her accusations." *Id.* Blum reported experiencing "'mood swings,' guilty feelings, feelings of hopelessness, [and] poor energy." *Id.* The attending resident diagnosed Blum with "delusional disorder" with "no major depression or psychotic features" and a Global Assessment of Functioning ("GAF") score of 40.[3] R. 262.

The following day, April 26, 2000, Dr. Klinger noted: "Ms. Blum is well known to me from outpt. care. She has at least a 3 yr hx of delusional d/o which is often accompanied by mood symptoms but not always." R. 263. Her suggested treatment during the commitment

---

[3] GAF scores represent a "clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("*DSM-IV*"). The scale is divided into 10 ten-point ranges reflecting different levels of functioning, with 1–10 being the lowest and 91–100 the highest. *Id.* A GAF score of 40 indicates "[s]ome impairment in reality testing (e.g., speech is at times illogical , obscure, or irrelevant) OR communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *DSM-IV* 34.

7

included antipsychotics, antidepressants, and attending formal and group meetings. R. 263. Dr. Klinger gave her a prognosis of "fair." *Id.* Blum was discharged on May 2, 2000, with an improved GAF score of 65.[4] R. 251, 262.

The rest of the record contains additional notes and reports from 2000 through 2008. These generally indicate that Blum's mental health conditions and corresponding treatment have continued since 2000. None of these records contain additional information about Blum's impairments or any resulting restrictions during her period of DIB eligibility in 1998.

Blum testified at her administrative hearing on June 23, 2011, primarily discussing her current mental status. *See* R. 538–44. She stated she has bipolar disorder, schizoaffective disorder, and anxiety, which cause her to experience mood swings, hear voices, and panic when confronted. R. 540. She takes medicine for these disorders and notices a marked difference when she is not on medication. R. 541. She reported that the medication makes her tired and she spends most of her day sitting. R. 539. She does laundry and sometimes vacuums or cleans her bathrooms. R. 539–40. She stated her symptoms began in reaction to increasingly frequent spousal abuse. R. 540–41. She saw a therapist who referred her to a colleague to get medication for post-traumatic stress disorder. R. 541. She reported that her symptoms, diagnoses, and medications had changed repeatedly in the fourteen years since she began treatment. *Id.*

   2.   *Analysis*

Step two of the disability evaluation requires a claimant to prove he or she suffers from a severe impairment. 20 C.F.R. § 404.1520(c). The impairment must be medically determinable, meaning it is "established by medical evidence consisting of signs, symptoms, and laboratory

---

[4] A GAF score of 65 indicates "[s]ome mild symptoms (e.g., depressed mood or insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *DSM-IV* 34.

findings, not only [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508; ; *accord Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) (noting that, while pain caused by an impairment can be disabling, subjective complaints of pain alone that are not supported by objective medical evidence of an impairment are insufficient). "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 404.1528.

The ALJ in this case looked at Blum's treatment notes from 1998 and determined that none directly concerned mental health. He therefore found no medical signs or laboratory findings to substantiate Blum's statement of symptoms and dismissed her claim pursuant to Social Security Ruling 96-4p. 1996 WL 374187. His finding was incorrect.

The record contains medical evidence that Blum had a mental impairment in 1998. A treatment note for allergies dated December 10, 1998, states that Blum was on Prozac and Clonazepam for depression and anxiety and "is seeing a psychiatrist for her depression." R. 301. Blum's customer history report at Rite Aid Pharmacy shows that from July 15, 1998, to December 10, 1998, Blum filled seven prescriptions for Prozac and Clonazepam that were written by Dr. Klinger. R. 224.

When Blum was committed for care to MCV in April 2000, Dr. Klinger helped fill out a psychiatric evaluation. R. 251–63. In the patient history, Dr. Klinger stated that she had seen Blum since 1997 for a delusional disorder often accompanied by mood swings. R. 263. Her diagnosis was not based upon Blum's description of past symptoms, but upon Dr. Klinger's evaluation and treatment of Blum over the preceding three years. Dr. Klinger's note confirms that Blum had a mental impairment during 1998.

9

The ALJ's opinion completely fails to account for the medical evidence documenting that between January 1 and December 31, 1998, Blum saw a psychiatrist who diagnosed her with delusional disorder and prescribed medication for anxiety and depression. Blum's diagnosis and treatment provides sufficient medical signs to find that she suffered from a medically determinable impairment. This evidence does not, however, establish that she suffered from a *severe* impairment.

To evaluate the severity of a mental impairment, the Commissioner employs a "special technique" described in 20 C.F.R. § 404.1520a. The Commissioner must rate the degree of a claimant's functional limitation in four areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The regulations state that an impairment "is *not* severe if it does not significantly limit the [applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a) (emphasis added). "Basic" work activities include functions like "walking, standing, sitting, lifting, [and] carrying." 20 C.F.R. § 404.1521(b). An impairment should be labeled "not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere" with an applicant's ability to work. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted); *Waller v. Colvin*, No. 6:12cv63, 2014 WL 1208048, at *7 (W.D. Va. Mar. 24, 2014) (citing *Evans*, 734 F.2d at 1014). This is not a difficult hurdle for the claimant to clear, *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999); yet, the claimant bears the burden of producing sufficient proof to clear it. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

The ALJ did not perform a severity analysis because he found that Blum did not suffer from a medically determinable impairment. A remand to determine severity is unwarranted,

10

however, because the record contains no evidence of any restrictions caused by Blum's impairment. Because there is no evidence of severity between January 1 and December 31, 1998, Blum cannot demonstrate she was prejudiced by the ALJ's error. *See Camp v. Massanari*, 22 F. App'x 311 (4th Cir. 2001) (requiring evidence that ALJ's error prejudiced claimant to justify remand); *Edwards v. Astrue*, No. 4:12cv5, 2012 WL 6082898, at *3 (W.D. Va. Dec. 6, 2012) (holding that a legal error may be harmless if the record could support only the conclusion reached by the Commissioner).

Dr. Klinger's patient history indicates that Blum had an impairment in 1998, but, aside from noting occasional "mood symptoms," it does not provide any information on how the impairment impacted Blum's ability to perform basic work activities. *See* R. 263. A Zung depression scale from March 1997 indicated moderate impairment, and a GAF score from April 2000 indicated severe to major impairments. Neither finding, however, relates to the relevant period.

Blum bears the burden of proving the existence of a severe impairment. The record simply does not contain any information about what restrictions in her functioning, if any, were caused by her mental impairment in 1998. Accordingly, the record supports but one conclusion: that Blum did not suffer from a severe impairment during the insured period.

B.   *Development of the Record*

Blum next asserts that the Commissioner failed in her duty under 20 C.F.R. § 404.1512(d) to help develop Blum's medical records. Pl. Br. 7. She specifically alleges that Dr. Terraciano, Dr. Blackburn, and Dr. Klinger have relevant treatment notes from 1998 that are not it the record because the Commissioner failed to request them. *Id.*

Blum carries "the burden of establishing a prima facie entitlement to benefits, and she consequently bears the burden of nonpersuasion." *Bell v. Chater*, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (citations omitted) (internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Ten years lapsed between Blum's treatment in 1998 and the filing of her initial application for disability in 2008. After filing her application, Blum did little to help the Commissioner procure her medical records. A log maintained by the Commissioner indicates that on July 9, 2009, Blum "wasn't sure about all of her history [and didn't] have anything written down from that time period that could help her." R. 518. When a state agency representative contacted her on September 8, 2009, Blum "was not very helpful and could not provide telephone numbers for her sources, she couldn't remember locations or dates either. She seemed rather disinterested in helping me find her doctors." R. 521.

Three months before Blum's administrative hearing, the ALJ provided her a copy of the medical records compiled by the Commissioner and reminded her of her obligation to produce evidence proving her impairment. R. 522. At her hearing, neither Blum nor her counsel[5] alleged deficiencies in the record, which was accepted into evidence without objection. R. 538.

Even so, the Commissioner has an obligation to "make every reasonable effort to help you get medical reports from your own medical sources." 20 C.F.R. § 404.1512(d). Every reasonable effort is defined as "[making] an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence

---

[5] At the administrative hearing, Blum was represented by a different attorney than the one who is prosecuting this appeal. *See* R. 7–8, 536.

has not been received, [making] one followup request to obtain the medical evidence necessary to make a determination." *Id.*

> Although the ALJ has a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record," *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986); "[he] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994).

*Bell*, 1995 WL 347142, at *4.

The Commissioner's efforts to develop the record in this case were more than adequate. The record contains a detailed log chronicling the Commissioner's attempts, with dozens of entries spanning more than five months. R. 515–21. The log indicates that treatment notes from the doctors Blum identified are not absent because of any failure to pursue them.

There is no evidence in the record that Blum saw Dr. Blackburn for psychological treatment. Blum's counsel points to a treatment note wherein Dr. Petrizzi suggested psychological therapy and gave Blum the names of Dr. Blackburn and Dr. Terraciano. R. 307. After that note, however, Dr. Blackburn's name shows up only twice in the record. R. 306, 302. No evidence exists that Blum saw Dr. Blackburn outside of her duties as an on-shift doctor. Additionally, at her hearing, Blum testified that she "went to a therapist and he sent me to a colleague of his to get medicine for post-traumatic stress disorder. . . . That was Dr. Teraciani (sic) and Dr. Klinger." R. 541.

The Commissioner made every reasonable effort to collect medical records from Dr. Terraciano. On July 9, 2009, Blum told a state agency representative that he treated her at Hanover Family Physicians. R. 518. The representative requested records from Hanover Family Physicians from 1995 onward and received a report on September 4, 2009. R. 519–20. The representative then directly contacted Dr. Terraciano, who stated that he no longer had records

13

for Blum and directed them to MCV Psychiatry. R. 520. The representative requested records from MCV Psychiatry from 1995 onward and received a report on September 22, 2009. R. 521. Dr. Terraciano's treatment notes were not included in either report. Their absence from the record is not due to the Commissioner's failure to pursue them.

Blum asserts that relevant treatment notes were created by Dr. Klinger and are missing from the record. As with Dr. Terraciano, the Commissioner made reasonable efforts to collect medical records from Dr. Klinger. A state agency representative who spoke to Dr. Klinger wrote: "[S]he has no records on this patient at this office. She did tell me that she [saw the] patient at Hanover County Community Service Board." R. 516. The representative requested records from Hanover County Community Services Board and received a report on July 27, 2009. R. 518, 519. Once again, the absence of additional treatment notes from Dr. Klinger is not attributable to a lack of reasonable diligence on the part of the Commissioner.

Considering the evidence in the log documenting the Commissioner's efforts to obtain Blum's medical records, I find that the ALJ satisfied the requirement to adequately develop the record.

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence supports the Commissioner's final decision. Therefore, I **RECOMMEND** that this Court **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 17, **AFFIRM** the Commissioner's final decision, and **REMOVE** this case from the active docket.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 b 1 C:

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such

14

Case 5:13-cv-00068-MFU-JCH Document 21 Filed 09/15/14 Page 14 of 15 Pageid#: 609

proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: September 15, 2014

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge